O

# United States District Court
# Central District of California

| | |
|---|---|
| MIGUEL ANGEL PEREZ LARA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>KRISTI NOEM et al.,<br><br>　　　　　　　Defendants. | Case № 5:25-cv-3072-ODW (JCx)<br><br>**ORDER GRANTING *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [4]** |

## I.　　INTRODUCTION

Petitioner Miguel Angel Perez Lara brings this petition for a writ of habeas corpus against Respondents Kristi Noem, Secretary of the Department of Homeland Security ("DHS"), Pamela Bondi, U.S. Attorney General, Todd Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"), James Rios, Director of ICE Los Angeles Field Office, Fereti Semaia, Warden of Adelanto ICE Processing Center ("Adelanto"), Executive Office for Immigration Review ("EOIR"), ICE, and DHS. (Pet. ¶ 1, ECF No. 1.)  Petitioner moves *ex parte* for an order requiring his immediate release from custody and enjoining Respondents from re-detaining him absent further order of this Court or a pre-deprivation bond hearing.  (Ex Parte Appl. ("TRO") 8, Dkt. No. 4.)  Respondents oppose the request.  (Opp'n, Dkt. No. 7.)  For the reasons discussed below, the Court **GRANTS** the TRO.

## II. BACKGROUND

Petitioner is a foreign citizen who has lived in the United States since November 2022, when he sought asylum at the United States-Mexico border. (Pet. ¶ 43.) At that time, ICE detained him for two weeks. (*Id.*) On December 8, 2022, after determining that he did not present a flight risk or danger to the community, ICE released Petitioner from custody on Order of Release on Recognizance ("OREC") pursuant to the parole authority in 8 U.S.C. § 1182(d)(5)(A). (*Id.*)

Concurrently with his release, ICE placed Petitioner in removal proceedings before the Santa Ana Immigration Court pursuant to 8 U.S.C. § 1229a. (*Id.* ¶ 44.) Petitioner appeared at seven removal hearings. (*Id.* ¶ 45.) In April 2024, he married a United States citizen, who, in July 2024, filed a family petition on his behalf with the United States Citizenship and Immigration Service. (*Id.* ¶ 46.)

In October 2024, local law enforcement arrested Petitioner in Anaheim, California, but no charges were filed against him pursuant to the arrest. (*Id.* ¶ 43.)

On October 8, 2025, during a routine check-in at ICE's office in Santa Ana, California, ICE re-detained Petitioner without notice. (*Id.* ¶ 47.) Before his arrest, Petitioner had attended several ICE check-ins without incident or indication that he would be re-detained. (*Id.*) Since his arrest, ICE has held Petitioner at the Adelanto. (*Id.* ¶ 48.) Petitioner requested a bond determination hearing before an immigration judge ("IJ"). (*Id.* ¶ 49.) On November 4, 2025, the IJ held a hearing. (*Id.*) However, relying on the Board of Immigration Appeals ("BIA") decision in *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), the IJ concluded that Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and thus ineligible to be released on bond. (*Id.*; TRO 7–8.)

Although Petitioner was previously granted parole on OREC, DHS continues to treat him as "seeking admission at the border," and thus subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and ineligible to be released on bond during the pendency of his removal proceedings. (Pet. ¶¶ 11–12.)

Based on these allegations, on November 16, 2025, Petitioner filed a Petition for Writ of Habeas Corpus on the grounds that his re-detention violates his Fifth Amendment right to due process and his Fourth Amendment right against unlawful arrests. (*Id.* ¶¶ 50–68.) That same day, Petitioner filed this Application for a Temporary Restraining Order and Order to Show Cause. (TRO.) Petitioner requests that the Court (1) order Respondents to immediately release Petitioner and enjoin Respondents from re-detaining him absent further order of this Court, or, in the alternative (2) order Respondents to immediately release Petitioner and enjoin Respondents from re-detaining him unless Respondents demonstrate at a pre-deprivation bond hearing, that Petitioner is a flight risk or danger to the community. (*Id.* at 2.) Petitioner also requests that the Court enjoin Respondents from relocating Petitioner outside of the Central District of California pending final resolution of this case. (*Id.*) Finally, Petitioners request that the Court order Respondents to show cause why a preliminary injunction should not issue. (*Id.*)

### III.   LEGAL STANDARD

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The standard for issuing a TRO is "substantially identical" to that for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain relief, a plaintiff must meet the "*Winter*" factors: (1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

The Ninth Circuit uses a sliding scale approach, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the sliding scale approach, a plaintiff is entitled to a preliminary injunction if he has raised "serious questions going to the merits . . . and the balance of hardships tips sharply in [his] favor," "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

## IV. DISCUSSION

Respondents first argue that this Court lacks jurisdiction over this matter. (Opp'n 6–10.) Respondents next argue that Petitioner fails to meet the requirements for a TRO. (*Id.* at 10–17.) The Court first considers whether it has jurisdiction, then turns to the merits of Petitioner's TRO.

### A. Jurisdiction

Respondents contend that 8 U.S.C. § 1252(b)(9) and (g) preclude this Court's review of Petitioners' TRO. (Opp'n 6–10.) The Court has considered identical arguments from Respondents in very similar factual circumstances and incorporates by reference its analysis from those recent cases. *See Garcia v. Noem*, No. 5:25-cv-02771-ODW (PDx), 2025 WL 2986672, at *2–4 (C.D. Cal. Oct. 22, 2025); *Gonzalez v. Noem*, No. 5:25-cv-02054-ODW (BFMx), 2025 WL 2633187, at *2–4 (C.D. Cal. Aug. 13, 2025). There, the Court held that § 1252(b)(9) and (g) does not deprive this Court of jurisdiction. (*Id.*) The same is true here.

### B. Merits of the TRO: *Winter* Factors

Having determined that the Court has jurisdiction over Petitioner's TRO, the Court now turns to its merits under the *Winter* factors.

1. *Likelihood of Success on the Merits*

The first *Winter* factor "is the most important," and "is especially important when a plaintiff alleges a constitutional violation and injury." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). Petitioner argues that he is likely to succeed on the merits

because his detention violates his due process rights. (TRO 11.) He contends that his OREC "was revoked without any notice or any opportunity to contest his detention before a neutral arbiter," thereby violating his right to procedural due process. (*Id.*) He further argues that his "re-arrest and detention . . . after he had already appeared in court on his civil immigration charge and absent any material change in circumstances" constitute an "unreasonable seizure in violation of the Fourth Amendment." (*Id.*) Respondents do not address Petitioner's due process arguments. (*See generally* Opp'n.) Instead, they argue only that § 1225, not § 1226, governs here, and that under the plain text of § 1225, Petitioner cannot show a likelihood of success on the merits. (*Id.* at 10–13.) However, Petitioner is not arguing that he is subject to § 1226. (*See generally* TRO.) He is arguing that his re-detention violates his constitutional rights. (*Id.* at 11; *see also* Pet. ¶ 34.) The Court agrees.

In evaluating similar due process claims, courts employ the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See, e.g.*, *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017). Under *Mathews*, courts evaluate (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguard"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. The Court addresses these three factors in turn.

a) <u>Private Interest</u>

Petitioner argues that he is likely to show that "the private interest at stake is clearly weighty" because his "liberty has been severely curtailed" while in ICE custody "without the ability to obtain release on bond." (TRO 14.) The Court agrees.

The Fifth Amendment protects all persons from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is settled law that noncitizens within the United States are entitled to due process "whether their

presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of [removal] proceedings."). The government's release of an individual from detention creates "an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

Here, when Petitioner was released on parole from his initial detention, he acquired a liberty interest which entitles him to due process. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). Furthermore, Petitioner's conduct since his release shows that he reasonably relied on this interest, and that the interest is weighty. After his release, Petitioner established a family in the United States. (Pet. ¶ 46.) He married a United States citizen and took affirmative steps to pursue lawful immigration process. (*Id.*; TRO 9.) The couple is expecting a child. (Pet. ¶ 46.) Petitioner's wife's pregnancy is high-risk, requiring her to stop working, and she depends on Petitioner for emotional and financial support. (Decl. Yvette Gutierrez ISO TRO ("Gutierrez Decl.") ¶¶ 8–9, Dkt. No. 4-2.) Petitioner now covers "all of the household expenses," and takes "lead on all domestic chores so that [his wife] can honor the rest required of her high-risk pregnancy." (*Id.*) Since Petitioner's release, he regularly attended ICE check-ins "with no issues and no threat of re-detention." (Pet. ¶ 47.) These actions were only possible by Petitioner's reliance on his private interest in freedom from detention, which is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

Respondents offer no answer to Petitioner's argument that his re-detention violates his due process rights by depriving him of his liberty. (*See generally* Opp'n.)

1  Instead, they argue that Petitioner is subject to "mandatory detention" pending
2  removal proceedings under § 1225. (*Id.* at 10–13.) As with any question of statutory
3  interpretation, the Court begins with the statutory text. Section 1225(a) defines an
4  "applicant for admission" as "[a]n alien present in the United States who has not been
5  admitted or who arrives in the United States." Section 1225(b)(2)(A) further provides
6  that, "in the case of an alien who is an applicant for admission, if the examining
7  immigration officer determines that an alien seeking admission is not clearly and
8  beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding"
9  under § 1229a.

     Under Respondents' interpretation, every noncitizen who has not been lawfully admitted continues to be "seeking admission" and thus subject to § 1225(b)(2). In other words, Respondents treat the terms "applicant for admission" and "seeking admission" as synonymous. (Opp'n 12–13.) But this reading collapses distinct statutory phrases and renders the term "seeking admission" in § 1225(b) superfluous. To fall under § 1225(b)(2), a noncitizen must be (1) an applicant for admission, (2) "seeking admission", and (3) "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2). If, as Respondents argue here, all "applicants for admission" are deemed to be "seeking admission" for as long as they remain applicants, then the phrase "seeking admission" would add nothing to § 1225(b)(2). This violates the rule against surplusage. *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning." (internal quotation marks omitted)).

     Moreover, Respondents' reading of the term "seeking admission" defies logic. As one district court recently observed:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would

> not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there.

*Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), --- F. Supp. 3d ---, 2025 WL 2371588, at *7 (S.D.N.Y. Aug. 13, 2025).

Petitioner has "passed through our gates," and "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Petitioner is not an "arriving" noncitizen, but one that has been present in the United States for over three years, (Pet ¶ 43), and is thus entitled to due process, *see Mezei*, 345 U.S. at 212. As Petitioner has an interest in continued liberty, the procedures used against him must adequately protect that interest. Accordingly, the first *Mathews* factor weighs in Petitioner's favor.

     b) <u>Risk of Erroneous Deprivation</u>

Petitioner argues that his re-detention results in a high risk of erroneous deprivation of his protected interest. (TRO 15.) The Court agrees.

Where an individual has not received a bond or custody redetermination hearing, "the risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO (HC), --- F. Supp. 3d ---, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (alteration in original). Civil immigration detention, which is "nonpunitive in purpose and effect," is justified only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690.

Here, Petitioner was released on parole in 2022 after Respondents determined that he was not a flight risk or a danger to the community. (Pet. ¶ 43.) Before his re-detention, Petitioner did not receive notice of Respondents' intention to re-detain him and had no opportunity to contest Respondents' action. (*See id.* ¶ 47; TRO 15.)

Respondents argue that Petitioner's re-detention was based on his failure to comply with self-reporting check-ins, for violating the terms of the Alternative to Detention program, and because ICE terminated him from the Intensive Supervision

Appearance Program ("ISAP"). (Decl. Mark Joven ISO Opp'n ("Joven Decl.") ¶¶ 10, 13–14, Dkt. No. 7-1.) However, Respondents acknowledge that Petitioner appeared when required to report to the Office of Enforcement and Removal Operation, and it was only at that appearance that he was informed that he had been terminated from ISAP. (*Id.* ¶ 13.) Furthermore, Respondents do not explain how Petitioner's alleged failure to comply with self-reporting check-ins, indicates that he is a flight risk or a danger to the community. (*See generally* Opp'n); *see Zadvydas*, 533 U.S. at 690 (holding that civil immigration detention is justified when a noncitizen presents a risk of flight or danger to the community).

Moreover, ICE arrested Petitioner during a scheduled check-in. (Pet. ¶ 47.) Respondents' belief that they had a valid reason to detain him does not eliminate their obligation to effectuate the detention in a manner that comports with due process. *See M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. July 17, 2025) ("[A]bsent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process."). As Petitioner has not been provided notice and a pre-deprivation hearing before an IJ to evaluate whether his re-detention is warranted based on flight risk or danger to community, the Court finds that the risk of erroneous deprivation is high. Thus, the second *Mathews* factor also weighs in Petitioner's favor.

### c) Respondents' Interest

Finally, Respondents' interest in re-detaining Petitioner's without first providing notice and a custody hearing is minimal. Respondents identify "no legitimate interest that would support detaining [Petitioner] without a pre-detention hearing." *Calderon*, 2025 WL 2430609, at *4. Nor do Respondents claim that providing a pre-detention hearing would be an administrative or financial burden. *Id.*; (*see generally* Opp'n). Thus, the third *Mathews* factor also weighs in Petitioner's favor.

In conclusion, the Court finds that all three *Mathews* factors weigh in Petitioner's favor. Thus, Petitioner has shown a likelihood of success on the merits of his due process claim.

### 2. *Likelihood of Irreparable Harm*

As to the second *Winter* factor, Petitioner contends that he will suffer irreparable harm in the absence of a TRO as he will continue to be unlawfully detained. (TRO 18–19.) Respondents offer no response. (*See generally* Opp'n.)

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "[I]n cases involving a constitutional claim, a likelihood of success on the merits usually establishes irreparable harm." *Baird*, 81 F.4th at 1048.

Here, as discussed above, Petitioner brings a constitutional due process claim which is likely to succeed on the merits. Accordingly, the Court finds that he has established irreparable harm, and thus the second *Winter* factor also weighs in favor of temporary injunctive relief.

### 3. *Balance of Equities and Public Interest*

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (citing *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)). "[T]he public has a strong interest in upholding procedural protections against unlawful detention," as well as "in the efficient allocation of the government's fiscal resources." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

Furthermore, the balance of hardships tips strongly in Petitioner's favor as he would suffer great hardship if the Court were to deny his TRO. *See Cottrell*, 632 F.3d at 1134–35 (requiring the balance of hardships to "tip[] sharply" in the moving party's favor). At most, Respondents' injury would be a short delay in re-detaining Petitioner, and despite their contention that they have a "compelling interest in the steady

enforcement of its immigration laws," (Opp'n 17), they "cannot reasonably assert" they are "harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda v. U.S. Immigr. & Nat. Servs.*, 753 F.2d 719, 727 (9th Cir. 1983). Thus, the last two *Winter* factors also weigh in favor of an injunction.

Having found that all *Winter* factors weigh in favor of injunctive relief, the Court **GRANTS** Petitioner's TRO.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's TRO. (Dkt. No. 4.) It is hereby **ORDERED** that:

- Petitioner shall be immediately released from Respondents' custody.
- Respondents are enjoined from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change in circumstances requiring his re-detention and a timely hearing. At any such hearing, Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a risk of flight or danger to the community; and
- Respondents shall **SHOW CAUSE**, in writing only, to be received by the Court no later than **November 26, 2025**, as to why the Court should not issue a preliminary injunction in this case. Petitioner may file a reply by **December 1, 2025, at 10:00 a.m.** The Court **SETS** a hearing on the preliminary injunction for **December 3, 2025, at 9:00 a.m.**, via Zoom.

**IT IS SO ORDERED.**

November 19, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**